UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
| --- | --- |
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TOMAS GUILLEN,<br><br>                    Defendant. | No. 18-CR-640 (RA)<br><br>MEMORANDUM<br>OPINION & ORDER |

RONNIE ABRAMS, United States District Judge:

Defendant Tomas Guillen has filed a *pro se* motion for a sentence reduction pursuant to

18 U.S.C. § 3582(c)(1)(A), seeking compassionate release in light of the global pandemic and

the medical needs of a family member. *See* Dkt. 324 ("Motion"). The Government opposes the

motion. *See* Dkt. 330 ("Gov. Mem."). For the reasons that follow, Guillen's motion is denied.

**BACKGROUND**

On September 25, 2019, Guillen pled guilty to one count of conspiracy to commit wire

fraud in violation of 18 U.S.C. § 1349, stemming from his participation in an elaborate scheme to

obtain and sell cell phone devices. *See* Dkt. 197 at 8; *see also* Gov. Mem. at 2–3. In February

2020, the Court sentenced Guillen to a term of 18 months' imprisonment, *see* Dkt. 276, which he

began serving on August 25, 2020 following several Court-ordered delays in the surrender date,

*see* Dkts. 271, 303. Guillen is currently incarcerated at the Devens Federal Medical Center in

Massachusetts. Per the Bureau of Prisons website, Guillen is scheduled to complete his term of

incarceration on November 23, 2021, and at that point to begin serving a three-year term of

supervised release.

Having exhausted his administrative remedies, Guillen moved for compassionate release

on November 19, 2020, seeking immediate release or, in the alternative, a reduction of his

sentence to nine months.[1] He asserts that extraordinary compelling reasons exist that warrant a reduction of his sentence, including that (a) release would allow him to provide care for his mother, who suffers from lupus and other health issues, and who in Guillen's absence must rely on healthcare arrangements that leave her vulnerable to contracting COVID-19; and (b) his mother's lupus indicates that Guillen himself is at a high genetic risk of developing lupus, which in turn would place him at higher risk from the coronavirus. *See* Motion at 1–4. He also argues that a reduction of his sentence comports with the Section 3553(a) factors, in that his mother's medical condition and the dangers of incarceration during the pandemic have made his prison time harsher than what was contemplated at sentencing. *Id*. at 4–5.

The Government opposes the motion, arguing that (a) Guillen's claims about his own health and risk of personally developing lupus are speculative and unsupported; and (b) the record reflects that Guillen's mother has other caretakers and family support; and (c) Guillen's plan to care for his mother while also working outside the home presents the same COVID-related risks to his mother that are presented by her current arrangement with a visiting nurse. Gov. Mem. at 6–8. The Government also argues that the Section 3553(a) factors militate strongly against any reduction in sentence, stressing the serious and extensive nature of Guillen's fraudulent conduct, the possibility of unwarranted sentencing disparities between Guillen and his codefendants, and Guillen's previous criminal conduct. *Id*. at 8–9.

## LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a district court may "reduce the term of imprisonment" where (1) "extraordinary and compelling reasons warrant such a reduction," (2) the reduction is "consistent with applicable policy statements issued by the Sentencing

---

[1] The motion was received by the Court and docketed on December 2, 2020.

Commission," and (3) the reduction is supported by the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). The Second Circuit recently held that nothing in "the now-outdated version of Guideline § 1B1.13[] limits the district court's discretion" to grant or deny a motion for a sentence reduction. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). Rather, the First Step Act "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id*. at 237. "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id*. at 238 (quoting 28 U.S.C. § 994(t)).

## DISCUSSION

Upon review of the parties' submissions and in consideration of the relevant statutory factors, the Court denies Guillen's motion.

First, the Court finds that Guillen has not established that extraordinary and compelling reasons exist that warrant either an immediate or partial termination of the defendant's term of imprisonment. Guillen first argues that his mother's medical condition, in particular that she suffers from lupus, constitutes such a compelling circumstance. *See* Motion at 1. Guillen attests that he is his mother's primary caretaker, and that he has previously served as a live-in nurse for her. In his absence, "another nurse has to come and go from [Guillen's] home, which places his mother's life in danger due to the spread of the COVID-19 virus." Motion at 2.

It is true that "the need to care for one's aging and sick parent may, in certain circumstances, warrant a finding that an extraordinary and compelling reason exists" to justify compassionate release, particularly during the COVID-19 pandemic. *United States v. Yoda*, No. 15-CR-95 (AJN), 2020 WL 5502325, at *2 (S.D.N.Y. Sept. 11, 2020). However, whether the

medical condition of a defendant's family member justifies the defendant's release generally depends on whether other caretakers are available. *See United States v. Kataev*, No. 16 CR. 763-05 (LGS), 2020 WL 1862685, at *3 (S.D.N.Y. Apr. 14, 2020) ("Release is warranted when Defendant is, in effect, the only available caregiver to family members who cannot care for themselves."); *Yoda*, 2020 WL 5502325, at *2 (finding no extraordinary and compelling circumstances where the defendant's "father [did] not appear to depend exclusively on [the defendant] for care"); *United States v. Ayala*, No. 16 CR 809 (VM), 2020 WL 6626015, at *1 (S.D.N.Y. Nov. 12, 2020) ("[W]hen the court receives evidence . . . indicating that the defendant is the only available caregiver for a family member in dire conditions, an extraordinary and compelling reason has been established.") (citations and quotation marks omitted); *see also United States v. John*, No. 15-CR-208 (CM), 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020) ("Although the Court has been freed by *Brooker* to consider the myriad of family circumstances that might warrant granting compassionate release, § 3582(c)(1)(A)(i) still only authorizes release where the family circumstances are truly 'extraordinary and compelling,' and not merely the inevitable circumstances families face when a family member is incarcerated.").

Here, although the Court appreciates Guillen's sincere desire to provide care for his mother, Guillen has not shown that she cannot receive adequate care while Guillen is incarcerated. As the warden at FMC Devens found, "[t]here is no supporting evidence to reflect that [Guillen is] the only available caregiver" for his parent. Dkt. 324 at 30. The Government notes that the defendant has various local relatives, including three siblings who live in the Bronx, where Guillen's mother lives. Moreover, although Guillen raises a legitimate concern that his mother is at risk of exposure to the coronavirus due to her nurse's travel to and from her home, the Court notes that comparable risks would present themselves were Guillen to return

4

home and assume a caregiving role, especially in light of his stated intention to work an additional job. *See* Motion at 6.

Guillen's next argument is that he himself is particularly vulnerable to COVID-19 due to his mother's lupus. *See* Motion at 2 ("Due to [Guillen's] genes he has an 80% chance of contracting the lupus disease."). But Guillen provides no basis for this 80 percent figure. While the medical sources cited by the Government do suggest that lupus is potentially heritable, the likelihood that a child of a mother with lupus will develop lupus appears to be in the range of 2–5 percent. *See* Gov. Mem. at 6 (citing Lupus Foundation of America, *Risk factors for developing lupus*, *available at* https://www.lupus.org/resources/risk-factors-for-developing-lupus (last visited January 7, 2021); Johns Hopkins Medicine, *Lupus Risk Factors* ("Only about 2 percent of children whose mothers have lupus will develop it."), *available at* https://www.hopkinsmedicine.org/health/conditions-and-diseases/lupus/lupus-risk-factors (last visited January 7, 2021)). Accordingly, even if Guillen is correct that someone with lupus is at higher risk of complications from the coronavirus, it is simply too attenuated to conclude that Guillen's mother's lupus places Guillen himself at an especially high risk of complications during the remaining months of his prison sentence. Given that Guillen is, by all indications, a healthy 35-year-old, the Court finds that the defendant's own health is not an extraordinary or compelling reason warranting a reduction of his sentence.

Second, the Court finds that the Section 3553(a) factors do not weigh in favor of a reduction of Guillen's sentence. Pursuant to Section 3553(a), the Court must impose a sentence that is sufficient, but not greater than necessary, to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public from further crimes of the defendant, and (4) provide the defendant with

training, medical care, and other treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

The Court also must consider other factors, including the nature and circumstances of the offense

and the history and characteristics of the defendant. *See id.* § 3553(a)(1); *see United States v.*

*Daugerdas*, No. 09-CR-581 (WHP), 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020).

As the Court noted at sentencing, Guillen's crime was elaborate and extensive: Guillen

and other members of the fraud ring hacked at least 3,300 customer accounts, fraudulently

charging at least 1,294 cell phones to those accounts without the knowledge and consent of the

account holders. Guillen and his co-conspirators traveled to at least 30 different states,

fraudulently obtaining over $1 million worth of electronic devices, which were brought or

shipped to the Bronx to be sold. Guillen was involved in multiple aspects of this scheme and was

responsible for a total loss of almost $475,000. *See* Dkt. 276 at 14–15. Moreover, the instant

offense is Guillen's fourth criminal conviction, and the Court noted at sentencing that Guillen

was apparently not deterred by his prior sentences. *Id.* at 15. Accordingly, the Court finds that a

reduction of Guillen's sentence to the time already served—a little over four months—would

neither sufficiently reflect the seriousness of the offense nor provide for adequate deterrence.

## CONCLUSION

For the foregoing reasons, Guillen's motion is denied. The Clerk of Court is respectfully

directed to terminate the motion pending at Dkt. 324, and to mail a copy of this order to the

defendant.

SO ORDERED.
  Dated:        January 7, 2021
               New York, New York

                                                  Ronnie Abrams
                                                  United States District Judge

6